VOTO DISIDENTE DE LA
JUEZ ALFONSO DE CUMPIANO
2001 DTA 13
San Juan, Puerto Rico, a 12 de septiembre de 2000
Debido a que entiendo que no hay base en este caso para intervenir con la decisión confirmatoria dispuesta por el Tribunal de Primera Instancia sobre el dictamen de la Comisión Estatal de Elecciones (C.E.E.), disiento de la sentencia mayoritaria, en lo que respecta a la frase "Gobierno de Puerto Rico". La sentencia mayoritaria se aparta, contrario a lo que allí se afirma, de las normas de revisión judicial reconocidas en casos de la naturaleza del que evaluamos. Es mi posición que la decisión revisada no debe modificarse, está fundamentada en la prueba, se ajusta a la interpretación de la ley, y no es arbitraria, irrazonable o constitutiva de abuso de discreción. Por los fundamentos siguientes, denegaría el recurso.
Está ampliamente reconocido, como normas de carácter general, que las decisiones de las agencias serán sostenidas por el tribunal en revisión si se basan en el expediente. Si la determinación se basa en éste, se le conferirá deferencia, a menos que sea arbitraria, ilegal, o en abuso de discreción. Las conclusiones de derecho serán revisables en toda su extensión. Corresponde a la parte que la impugna, demostrar al tribunal que mediaron las circunstancias que ameritan su intervención para modificar o revocar el dictamen administrativo. Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. see. 2175; Fuertes y otros v. A.R.P.E., 134 D.P.R. 947 (1993), 93 J.T.S. 165, pág. 11383; A.R.P.E. v. Junta de Apelaciones sobre Construcciones y Lotificaciones, 124 D.P.R. 858 (1989).
Aunque la solicitud de autorización e impugnación de anuncios de las agencias durante la veda electoral se origina en la C.E.E., la revisión judicial de las decisiones de este organismo sobre ellas, no goza de la misma naturaleza que la revisión ordinaria. En lugar de ser revisadas sus decisiones directamente por este Tribunal, el artículo 1.016 de la Ley Núm. 4 de 20 de diciembre de 1977, según enmendada, conocida como la Ley Electoral de Puerto Rico, brinda a las partes la oportunidad de un juicio de novo ante el Tribunal de Primera Instancia. Dicho tribunal celebrará vista en su fondo, recibirá evidencia y formulará determinaciones de hechos y conclusiones de derecho. 16 L.P.R.A. sec. 3016a. Conforme el artículo 1.017 de la referida ley, la parte afectada *612 por una decisión así dictada por el Tribunal de Primera Instancia podrá presentar un recurso de revisión "fundamentado en cuestiones de derecho ante el Tribunal de Circuito de Apelaciones... ”. 16 L.P.R.A. see. 3016b (Supl. 1999).
En el caso de Miranda v. C.E.E., 141 D.P.R. _ (1996), 96 J.T.S. 137, págs. 234-235, el Tribunal Supremo de Puerto Rico se expresó sobre el ámbito de la revisión judicial en juicios de novo en casos de impugnación de las decisiones dictadas sobre anuncios bajo la veda electoral. Reconoció la facultad del Tribunal de Primera Instancia para admitir evidencia pertinente, aun aquélla que no hubiese sido objeto de consideración por la C.E. E. Además, acogió las siguientes expresiones sobre el alcance de la autoridad revisora del tribunal en la consideración de un proceso de juicio de novo:

“La función central de la revisión judicial substantiva es asegurarse de que las agencias actúan dentro del marco del poder delegado y consistentes con la política legislativa. De ella emanan los controles del comportamiento administrativo. Por tal razón, la revisión judicial reviste extrema importancia. ”

D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, Forum Ed., 1993, págs. 503-504.
En el referido caso de Miranda v. C.E.E., al evaluar el dictamen allí emitido en juicio de novo, el Tribunal Supremo aplicó las normas clásicas de revisión judicial de las decisiones administrativas. En ese sentido, aludió a la revisión de las conclusiones de derecho en todos sus aspectos y a la deferencia que se ha reconocido a las agencias administrativas como instrumentos necesarios para la interpretación de la ley. En cuanto al dictamen basado en el récord, invocó el Tribunal Supremo, para sostener su posición, prueba documental del expediente relativa a un informe de la Junta de Anuncios de la C.E.E. interpretando el entonces vigente Reglamento para el Control de Gastos de Difusión Pública del Gobierno. Miranda v. C.E.E., supra, pág. 236. 
En definitiva, en el juicio de novo se presenta prueba para la revisión de la decisión de la C.E.E., mas ese proceso no está ajeno a las normas reconocidas de revisión judicial de las decisiones administrativas. La jurisprudencia de nuestro Tribunal Supremo ha sido consistente en esa trayectoria de revisión, velando porque los dictámenes judiciales sobre las decisiones de la C.E.E. referentes a la impugnación de anuncios de gobierno durante la veda electoral, respondan, en cuanto a la aplicación e interpretación de la Ley Electoral, a lo que se ha identificado como la "clara intención legislativa" de excluir la influencia solapada en el electorado del partido en el poder a través de anuncios o mensajes gubernamentales. CEE v. Departamento de Estado, 134 D. P.R. 927, 939-940 (1993); Romero Barceló v. Hernández Agosto, 115 D.P.R. 368, 393 (1984); Marrero v. Municipio de Morovis, 115 D.P.R. 643, 647-648 (1984); PNP v. Tribunal Electoral, 104 D.P.R. 741 (1976).
Siguiendo las directrices del Tribunal Supremo, los tribunales estamos compelidos a interpretar el alcance del artículo 8.001 de la Ley Electoral de Puerto Rico, de modo que prevalezca la importante política pública que lo inspira. C.E.E. v. Departamento de Estado, supra.
La disposición referida prohíbe que del 10 de enero del año eleccionario al día después de los comicios generales, las agencias de gobierno, la Asamblea Legislativa y la Rama Judicial incurran en gastos para la compra de tiempo y espacio en los medios de comunicación pública con el propósito de exponer sus programas, proyectos, realizaciones, proyecciones o planes. Como excepción a lo anterior, se permite la publicación de avisos o anuncios requeridos por ley. Otra excepción es la allí dispuesta en cuanto a la difusión de información de interés público, urgencia, o emergencia con la autorización previa de la Comisión Estatal de Elecciones. 16 L.P.R.A. see. 3351 (Supl. 1999). Véase, además, sobre el alcance de la prohibición, la sección 1.2 del Reglamento para el Control de Gastos de Difusión Pública del Gobierno, Elecciones Generales 2000 (el Reglamento). Tratándose de una excepción a la prohibición plasmada en el estatuto y cuyo cumplimiento se ha considerado consustancial a los principios constitucionales de paridad electoral, el Reglamento dispone que sobre la agencia proponente recaerá el peso de la prueba para demostrar que el gasto propuesto en la solicitud *613 no se hace con el propósito de exponer programas, proyectos, logros, realizaciones, proyecciones, o planes. Véase Sección 6.1 del Reglamento.
Finalmente, está ampliamente reconocido en el ámbito del derecho administrativo que las agencias vienen llamadas a interpretar de manera uniforme la ley que administran y la reglamentación adoptada a su amparo. Específicamente, en cuanto al asunto que tratamos, cobra particular importancia la advertencia del Tribunal Supremo a los efectos de que "podría también resultar en extremo perjudicial a los propósitos de la prohibición contenida en el Art. 8.001 de la Ley Electoral, el que cada vez que se presente un anuncio ante la C.E.E. para su aprobación, ésta resolviera de modo inconsistente... ” Miranda v. C.E.E., supra, pág. 236.
El análisis del caso que consideramos, bajo las antedichas normas de revisión judicial, refleja que no erró el tribunal recurrido en su dictamen.
Es necesario examinar, en primer lugar, la prueba que consideró el Tribunal de Primera Instancia en el juicio de novo que le llevó a confirmar la decisión de la C.E.E. en aprobación de la solicitud de autorización presentada por el Departamento de Salud para diseminar una campaña de orientación sobre el uso del agua potable. Esta autorización estuvo sujeta a la condición de que se eliminara del logo del Departamento la frase "Gobierno de Puerto Rico" y que se eliminara de un símbolo del anuncio la frase "Nuestros Niños Primero". En cuanto a esta última, coincido con la sentencia mayoritaria que determina fue correcto lo resuelto por el tribunal recurrido.
En lo que nos concierne, surge del expediente y de la sentencia recurrida que las partes estipularon la siguiente prueba: el informe del Presidente de la Junta Examinadora de Anuncios de la C.E.E. sobre el anuncio en cuestión; la autenticidad de los documentos que acompañaron la solicitud de revisión, y el hecho de que no existe en el Comité Central del Partido Nuevo Progresista (P.N.P.) ningún rótulo o anuncio que contenga la frase "Gobierno de Puerto Rico" ni "Nuestros Niños Primero". Sobre lo anterior, el Departamento de Salud presentó una declaración jurada del Sr. José Aponte Hernández y de la Sra. Agnes R. Vélez Medina, anterior Secretario y Subsecretaría del P.N.P., respectivamente, en la que hicieron constar que las dos frases ("Gobierno de Puerto Rico" y "Nuestros Niños Primero") no han sido utilizadas como "slogan" del P.N.P. en las campañas políticas, ni en prendedores, ni se encuentran en el Comité Central del P.N.P. Las partes acordaron que el testimonio del Presidente de la Junta de Anuncios, Ledo. Angel Hermida, seria sometido a través de los documentos estipulados que constan en el Exhibit B del memorando en cumplimiento de orden presentado ante el tribunal recurrido por la C.E.E. Estos documentos consisten en informes previos de la C.E.E. en los que ésta ha autorizado anuncios bajo la veda electoral, sujeto a que las agencias u organismos solicitantes suprimieran la frase "Gobierno de Puerto Rico". 
De los aludidos informes sometidos como prueba al tribunal recurrido, que representan también el testimonio que ofrecería el licenciado Hermida, surgen las razones de la Junta de Anuncios de la C.E.E., avaladas por la C.E.E., para que de numerosos anuncios gubernamentales presentados para autorización durante la veda electoral se eliminara la frase “Gobierno de Puerto Rico”. Entre éstas, que el nombre oficial de 1¿ entidad jurídica y política del país es "Estado Libre Asociado de Puerto Rico", que las agencias gubernamentales no pueden hacer caso omiso de la realidad constitucional y que la Junta, actuando por acuerdo unánime de los representantes de los partidos políticos, ha ordenado una y otra vez que se elimine la frase "Gobierno de Puerto Rico" de aquellos anuncios que ha aprobado. Apéndice de la oposición, pág. 4, nota al calce 2. Reiterando lo anterior, en otro informe, la Junta hizo referencia al informe CEE-SA-99-140 y expresó que por las razones allí dispuestas, el uso de la frase "Gobierno de Puerto Rico" en lugar de "Estado Libre Asociado de Puerto Rico" para referirse a la entidad jurídica gubernamental", es un acto de partidismo político que no puede ser sufragado con fondos públicos". Apéndice de la oposición, págs. 10-11, nota al calce 2.
En el informe CEE-SA-99-140, la Junta Examinadora de Anuncios discutió y fundamentó el porqué debía eliminarse de los anuncios durante la veda electoral la frase "Gobierno de Puerto Rico". Aludió a las posiciones *614 del Partido Pópular Democrático (P.P.D.) y del P.N.P. sobre la fórmula que debe regir el país, para concluir que la sustitución de la frase "Estado Libre Asociado de Puerto Rico" por "Gobierno de Puerto Rico", denigra el Estado Libre Asociado, cuya fórmula defiende el P.P.D. y es un acto de partidismo político que no puede ser sufragado con fondos públicos. Apéndice de la oposición, pág. 16. Señaló, nuevamente, que en los aproximadamente trescientos (300) casos resueltos por la Junta, la gran mayoría por acuerdo unánime de los partidos, se ha ordenado la eliminación de la frase "Gobierno de Puerto Rico". Apéndice de la oposición, pág. 17, nota al calce 3.
En el informe CEE-SA-00583 se abundó sobre la práctica, las razones de la condición y la uniformidad de la Junta, por voto unánime de los representantes de los partidos, de que se suprima la frase "Gobierno de Puerto Rico" como requisito para difundir los anuncios durante el período de veda. Apéndice de la oposición, págs. 22-24. En el informe CEE-SA-00-787, el Presidente de la Junta, al no haber unanimidad de los representantes de los partidos respecto a los recordatorios a ser entregados en eventos especiales de la Administración de Fomento Comercial, reiteró las razones para no permitir anuncios en que se incluyera la frase "Gobierno de Puerto Rico". Apéndice de la oposición, págs. 28-29, nota al calce 1. 
La prueba sometida por el Departamento de Salud ante el tribunal recurrido no controvirtió, como le correspondía, los hechos y fundamentos expuestos por la C.E.E. en los informes previos para condicionar el anuncio, eliminando la frase "Gobierno de Puerto Rico", que se presentaron y consideraron en la resolución de este caso por el tribunal. No abordó los señalamientos de la C.E.E. sobre la práctica gubernamental, evidenciada por pmeba de los informes de los numerosos anuncios presentados ante ésta. La declaración jurada que presentó sólo adujo a que la frase no se había utilizado en campañas políticas, ni en el Comité Central del P.N.P. En sus argumentaciones ante el foro recurrido, el Departamento de Salud argüyó que la determinación es errada porque se pretende modificar y enmendar el logo de dicho Departamento, el que está registrado desde 1994 en el Departamento de Estado. Planteó que, contrario a la determinación del Tribunal Supremo en el caso de Miranda v. C.E.E., supra, consistente en que la estrella se había convertido en un símbolo político, la referida frase no lo era.
A base de la prueba estipulada y de los argumentos de las partes, así como de su propio análisis, el tribunal de instancia sostuvo la decisión de la C.E.E. y determinó que tanto la frase "Gobierno de Puerto Rico" como "Nuestros Niños Primero" están identificadas con el partido de gobierno. Por ende, resolvió que su utilización en campañas publicitarias es contraria a los principios de la Ley Electoral, según expuestos en el artículo 8.001 y en la jurisprudencia interpretativa de éste.
Certeramente apuntó que existe una gama de posibilidades que pueden llevar mensajes político-partidistas. Puntualizó que la sustitución en documentos oficiales por el partido en el poder del nombre de "Estado Libre Asociado de Puerto Rico" por "Gobierno de Puerto Rico", es una conocida acción que creó controversia en el ambiente político del país. Se refirió al caso de Faz Alzamora v. Rosselló González, 150 D.P.R. _ (2000), 2000 J.T.S. 74, págs. 1035-1042, que consiste en una resolución publicada por contener opiniones disidentes.
Es de conocimiento público que la controversia a la que aludió el tribunal por el uso de "Gobierno de Puerto Rico" en sustitución del "Estado Libre Asociado de Puerto Rico", y a la que hace referencia la sentencia de la mayoría del Panel, llevó al Sen. Antonio J. Faz Alzamora a presentar, en 1998, un recurso de mandamus en el Tribunal de Primera Instancia, Sala Superior de San Juan. Solicitó que se expidiera un mandamus ordeñando al Gobernador de Puerto Rico, Hon. Pedro Rosselló, que restituyera inmediatamente el nombre "Estado Libre Asociado de Puerto Rico" en todos los documentos y comunicaciones -orales y escritas- de la Rama Ejecutiva y de los municipios, y que el Gobernador requiriera de todos los departamentos y agencias que acataran la orden que se expidiera. Debido a que el tribunal recurrido hizo referencia a ese proceso judicial como evidencia de la controversia política entre los partidos, conviene examinar lo que los tribunales expresaron al respecto, a. manera de ilustración del alcance de dicha controversia.
*615 En su sentencia desestimando el mandamus en el caso de Faz Alzamora, por razón de que los tribunales no deben juzgar "la sabiduría de una determinación de política pública que le corresponde hacer a las ramas legislativa y ejecutiva", y concluyendo que el término "Gobierno de Puerto Rico" no altera la estructura del sistema de gobierno constitucional, el Tribunal de Primera Instancia encontró probado el siguiente hecho:

“Tan pronto como el Hon. Pedro Rosselló González tomó posesión de su cargo, los funcionarios de la Rama Ejecutiva de su gobierno instauraron la práctica de sustituir el nombre "Estado Libre Asociado de Puerto Rico" por el de "Gobierno de Puerto Rico" en los documentos y comunicaciones oficiales. Esta sustitución se efectuó de manera paulatina en las diversas agencias, departamentos e instrumentalidades gubernamentales y municipales. ”

Sentencia sumaria de 5 de abril de 1999, dictada por el Tribunal de Primera Instancia en el caso Antonio J. Faz Alzamora v. Pedro Rosselló González, Civil Núm. KPE-98-09162.
El Tribunal de Circuito de Apelaciones modificó el fundamento de la sentencia previamente aludida y dejó sin efecto su conclusión de que la cuestión planteada constituye una cuestión política, pero confirmó la desestimación del mandamus por ausencia de alegaciones demostrativas sobre la legitimación activa del Sen. Faz Alzamora, en sentencia de 13 de diciembre de 1999, KLAN-99-00536. El Tribunal Supremo denegó la expedición del recurso, sin expresión alguna sobre la controversia central. Tres jueces votaron para expedir y dos jueces emitieron opiniones disidentes, las que se refirieron a la práctica gubernamental de utilizar "Gobierno de Puerto Rico" en sustitución de "Estado Libre Asociado de Puerto Rico". Ambos hubiesen expedido el mandamus para que todo documento público, incluso anuncios gubernamentales, se identificara con el nombre de "Estado Libre Asociado de Puerto Rico", en lugar de "Gobierno de Puerto Rico". Faz Alzamora v. Rosselló González, supra, págs. 1035-1042.
En el caso que tratamos, el tribunal recurrido, aunque acogió expresiones de una de las opiniones disidentes del caso previamente referido, señaló que no corresponde, bajo la controversia que consideramos, pasar juicio sobre la ilegalidad o no de dicha práctica. Apéndice del recurso, pág. 10, nota al calce 14. Aludió a las posiciones conflictivas de los partidos P.P.D. y P.N.P. sobre el propósito y alcance de tal sustitución en el nombre de la entidad política del país que surgen de éste. Ello sí es pertinente al caso revisado, en tanto en cuanto la utilización reiterada de la frase "Gobierno de Puerto Rico", suprimiendo "Estado Libre Asociado de Puerto Rico" conlleva un mensaje de proyección y planes sobre la concepción del Estado Libre Asociado de Puerto Rico por el partido en el poder.
A base de todo lo anterior, considero, a diferencia de la mayoría del Panel, que la prueba sustentó la razonabilidad de la condición impuesta. Los informes condicionando anuncios presentados ante la Junta Examinadora de Anuncios en los que se insertó la frase "Gobierno de Puerto Rico" demostraron un patrón de sustitución del nombre "Estado Libre Asociado de Puerto Rico" en los anuncios gubernamentales; la controversia en el ambiente político del país por la sustitución en los documentos públicos y otros escritos gubernamentales por la presente administración de gobierno, del nombre "Estado Libre Asociado de Puerto Rico" por la frase "Gobierno de Puerto Rico", quedó evidenciada en el caso Faz Alzamora v. Rosselló González, supra, en donde se identificaron las posturas divergentes del partido en el poder y del principal partido de oposición. La prueba documental demostró que la determinación tomada por la Junta en cuanto al anuncio, no es una aislada, sino que la condición impuesta forma parte de un patrón de interpretación uniforme de la C.E.E. durante el período de veda electoral.
El Departamento de Salud no logró controvertir la decisión de la C.E.E. en cuanto a que la frase en su logo, a ser utilizada en un anuncio o campaña, como otros anuncios gubernamentales en iguales circunstancias, constituye un acto de partidismo político durante la veda electoral. Tampoco logró demostrar que la inserción de la frase en controversia en el logo del Departamento es necesaria para los efectos de la campaña para cuya difusión solicitó autorización, puesto que al indicar el nombre de la agencia se expone claramente que la *616 campaña es de naturaleza gubernamental. Recaía sobre dicho Departamento el peso de la prueba para demostrar que tanto las frases "Gobierno de Puerto Rico" como "Nuestros Niños Primero", no se incluyeron con el propósito de exponer proyecciones o planes en cuanto al nombre "Estado Libre Asociado de Puerto Rico", y que tal inserción era imprescindible para lograr el fin público informativo de la campaña publicitaria sobre el manejo del agua potable. Sec. 6.1 del Reglamento.
Entiendo que el tribunal, ante la controversia según le fue planteada, no erró al determinar que el uso de la frase "Gobierno de Puerto Rico", según aparece en el logo del Departamento de Salud a utilizarse en el anuncio, contraviene los principios básicos perseguidos por el artículo 8.001 de la Ley Electoral. A mi juicio, es razonable esa interpretación bajo las normas jurisprudenciales sobre el cumplimiento con el mandato legislativo inequívoco de excluir la influencia solapada del partido en el poder mediante la difusión de anuncios gubernamentales. Limitar la prohibición, como pretende el Departamento de Salud, para que se circunscriba a símbolos políticos o distintivos de campañas políticas de los partidos, y no aplique a campañas gubernamentales del partido en el poder que contengan mensajes político-partidistas, es contrario a las normas jurisprudenciales señaladas.
En virtud de todo lo anterior, disiento y denegaría la expedición del recurso.
LADY ALFONSO DE CUMPIANO
Jueza
ESCOLIOS VOTO DISIDENTE DE LA JUEZ ALFONSO DE CUMPIANO - 2001 DTA 13
1. Conforme lo dispuesto en la sec. 1.3 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. see. 2102, se excluye a la Comisión Estatal de Elecciones de la definición de agencia.
2. Para una discusión sobre el alcance del juicio de novo, vis a vis la revisión judicial tradicional, según la jurisprudencia del Tribunal Supremo previo al caso de Miranda v. C.E.E, supra, véase, D. Fernández Quiñones, ob. cit. págs. 556-563.
3. Es de señalar que a pesar de lo relevante para los efectos de la resolución de este caso de los documentos estipulados que consistían en el testimonio del licenciado Hermida, el Departamento de Salud no los incluyó en el apéndice del recurso, en contravención de lo dispuesto en la Regla 34 (E) (1) (d) de nuestro Reglamento, aplicable en estos recursos en virtud de la Regla 44. Ante ello, la C.E.E. los incluyó con su oposición.
4. En su escrito de oposición, la C.E.E. distinguió el informe sometido por el Departamento de Salud en su apéndice del recurso, el que no estuvo bajo la consideración del tribunal. Véanse, Reglas 44 y 34 (E) (2) del Reglamento de este Tribunal. En el informe incluido y discutido en el recurso, se autorizó el uso de la frase "El Gobierno de Puerto Rico" en minúsculas en otro contexto que el de los informes que constituyeron prueba en este caso.